**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| THOMAS MELONE,<br><br>               Plaintiff<br><br>v.<br><br>CHRISTOPHER L. SLACK, in his official capacity as Connecticut Statewide Bar Counsel and BRIAN STAINES, in his official capacity as Connecticut Chief Disciplinary Counsel,<br><br>               Defendants. | ) ) ) ) ) ) ) ) ) )   Case No. 3:26-cv-811 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**
*42 U.S.C. § 1983 — First, Fifth, and Fourteenth Amendments*

Plaintiff Thomas Melone, an attorney admitted to the bar of the State of Connecticut and appearing pro se, for his Complaint against Defendants Christopher L. Slack, in his official capacity as Connecticut Statewide Bar Counsel, and Brian Staines, in his official capacity as Connecticut Chief Disciplinary Counsel, alleges as follows.

**INTRODUCTION**

1.      This is a pre-enforcement civil-rights action under 42 U.S.C. § 1983 to prevent the imminent application against Plaintiff of seven content-based speech restrictions embedded in the Connecticut Rules of Professional Conduct ("CT RPC" or "the Rules"), through the reciprocal-discipline machinery of Connecticut Practice Book § 2-39. Plaintiff is the subject of an ongoing Vermont attorney-disciplinary proceeding — Petition of Misconduct, In re Thomas Melone, Vermont Professional Responsibility Board ("PRB") Case No. 120-2025 — that, if it results in any order of public discipline, will trigger automatic reciprocal-discipline proceedings against Plaintiff in Connecticut. Practice Book § 2-39 makes the foreign discipline order prima facie evidence of misconduct in Connecticut, places the burden of disproving the foreign findings on the respondent by clear and convincing evidence, and requires Connecticut Disciplinary Counsel to obtain a certified copy of the foreign order and file it with the Superior Court without independent investigation of the underlying conduct. The credible threat of that mechanism — operating now,

1

before any Vermont order is entered — is the concrete and particularized injury for which Plaintiff seeks relief.

2.      Plaintiff is a forty-year multi-state-licensed attorney whose Connecticut license is in good standing and against whom no disciplinary complaint has ever been filed in Connecticut. Plaintiff is a developer, owner, and operator of renewable-energy facilities. As such, he routinely petitions and intends to continue petitioning Connecticut's Department of Energy and Environmental Protection ("DEEP"), Public Utilities Regulatory Authority ("PURA"), the General Assembly's Energy and Technology Committee, and the State's two regulated electric distribution companies ("EDCs") — Eversource Energy and The United Illuminating Company — on matters of renewable-energy policy, ratemaking, procurement, and program design. That petitioning activity is core First Amendment conduct, absolutely privileged under the *Noerr-Pennington* doctrine and protected by the Speech and Petition Clauses.

3.      The Vermont Petition rests entirely on Plaintiff's petitioning activity in Vermont — filings before the Vermont Public Utility Commission, communications with elected Town of Bennington officials, dissemination to a public official of comments submitted to a Vermont legislative committee, and pleadings in Vermont state and federal courts. The Vermont charges are pending under nine Vermont Rules of Professional Conduct ("VRPC") whose Connecticut analogs are challenged here: VRPC 3.1, 3.3(a)(1), 3.5(b)(1), 3.5(d), 4.2, 4.3, 4.4(a), 4.5, and 8.4(d). Each is a content-based regulation of speech that fails First Amendment strict scrutiny, sweeps across constitutionally protected petitioning activity, and is impermissibly vague.

4.      The constitutional injury Plaintiff suffers is not contingent on Vermont's entry of a disciplinary order. It exists now. As the Supreme Court unanimously held just weeks ago in *First Choice Women's Resource Centers, Inc. v. Davenport*, 608 U.S. ___, 146 S. Ct. 1114 (Apr. 29, 2026) ("*First Choice*"), constitutional injury from government action targeting First Amendment activity "occurs not just when a demand is enforced, but when it is made and for as long as it remains outstanding." Slip op. at 12. The credible threat of a Connecticut § 2-39 presentment built atop a Vermont order — supplemented by Plaintiff's recognition that the same conduct described

2

in the Vermont Petition would constitute the same speech in Connecticut — has chilled and continues to chill Plaintiff's intended petitioning before CT DEEP, PURA, the General Assembly, and the EDCs and other entities. Plaintiff has refrained from filings and communications he would otherwise undertake, and has modified the content and tone of communications he has submitted, in order to avoid creating evidence to be used in a § 2-39 presentment or in a separate Connecticut disciplinary complaint. The chilling effect operates as a present, ongoing First Amendment injury.

5. This Court has subject-matter jurisdiction over Plaintiff's challenge under *Cerame v. Slack*, 123 F.4th 72 (2d Cir. 2024), which held that Connecticut-licensed attorneys have standing under *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014), to bring pre-enforcement First Amendment challenges to Connecticut bar rules whose enforcement is credibly threatened. The Defendants here occupy the prosecutorial-enforcement role required for relief under *Ex parte Young*, 209 U.S. 123 (1908). Practice Book § 2-39 expressly directs "the disciplinary counsel" — defined in Practice Book § 2-34A(a) as the Chief Disciplinary Counsel or any disciplinary counsel — to obtain a certified copy of a foreign discipline order and file it with the Superior Court, thereby initiating reciprocal-discipline proceedings. Chief Disciplinary Counsel, under Practice Book § 2-34A, is the State's principal prosecutorial officer for attorney discipline. Statewide Bar Counsel, under Practice Book § 2-34, has the administrative duty of reporting Connecticut disciplinary action to the national disciplinary data bank, receiving information from that data bank concerning the discipline of Connecticut-admitted attorneys in other jurisdictions, and assisting the Statewide Grievance Committee. Both Defendants thus have the "some connection with the enforcement of the act" that *Ex parte Young* requires and that *Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021), preserves. Both are amenable to suit in their official capacities for prospective declaratory and injunctive relief.

6. The relief Plaintiff seeks is prospective and equitable. He does not seek damages. He seeks (i) a declaration that the named Connecticut rules — CT RPC 3.1, 3.3(a)(1), 3.4(7), 3.5(2), 4.2, 4.4(a), and 8.4(4) — are unconstitutional on their face and as applied to him, (ii) a declaration that the speech and petitioning activity charged in PRB Case No. 120-2025 is

3

immunized under the First Amendment and the *Noerr-Pennington* doctrine in any CT enforcement proceeding, (iii) a preliminary and permanent injunction barring Defendants from initiating, prosecuting, or maintaining a Practice Book § 2-39 reciprocal-discipline presentment against Plaintiff based on the conduct charged in PRB Case No. 120-2025, and (iv) an award of costs and attorneys' fees under 42 U.S.C. § 1988.

7.    This action is filed in the District of Connecticut because the constitutional injury arises in Connecticut: it is the credible threat of Connecticut reciprocal-discipline enforcement against protected speech and petitioning activity of Plaintiff. Plaintiff's federal action presently pending in the District of Vermont, *Melone v. Hanley et al.*, No. 2:26-cv-38 (D. Vt., filed Feb. 18, 2026), challenges the Vermont disciplinary proceeding itself. The Vermont action and this action proceed against different sovereigns, different defendants, different rules, and different procedural postures, and there is no parallel-action concern under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). Each forum is necessary to address the distinct constitutional injury arising in that jurisdiction.

8.    The Supreme Court's recent decisions in *First Choice* and *SEC v. Jarkesy*, 603 U.S. 109 (2024), reinforce the necessity of federal-court adjudication. *First Choice* squarely forecloses any argument that Plaintiff must exhaust Connecticut administrative or state-court remedies before invoking § 1983: "our cases have already rejected the notion that a litigant must exhaust available state court remedies before seeking to vindicate its federal constitutional rights in federal court under § 1983." Slip op. at 18. Requiring exhaustion would create the "preclusion trap" the Supreme Court has identified as "hollow[ing] out" the statute. *Id.* at 18–19. *Jarkesy* further reinforces the constitutional concern: where state machinery would deprive a plaintiff of a federal right to a jury — the right that § 1983 vindicates through suits at law — abstention in favor of an administrative tribunal compounds rather than cures the constitutional injury.

**JURISDICTION AND VENUE**

9.    This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343(a)(3) (civil rights), and 28 U.S.C. § 1332(a)(1) (diversity of

citizenship; Plaintiff is a citizen of Florida, Defendants are officials of the State of Connecticut, and the matter in controversy exceeds $75,000 exclusive of interest and costs). Plaintiff's claims arise under 42 U.S.C. § 1983 and the First, Fifth, and Fourteenth Amendments to the United States Constitution. This Court has authority to grant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and Federal Rule of Civil Procedure 57; injunctive relief under 28 U.S.C. § 1343(a)(3), Federal Rule of Civil Procedure 65, and the general equitable powers of the Court; and attorneys' fees under 42 U.S.C. § 1988.

10. Section 1983 authorizes federal courts to issue injunctions against state officials, including against state proceedings, as a remedy for deprivations of federal constitutional rights. *Mitchum v. Foster*, 407 U.S. 225, 242 (1972) ("[The] legislative history makes evident that Congress clearly conceived that it was altering the relationship between the States and the Nation with respect to the protection of federally created rights; it was concerned that state instrumentalities could not protect those rights; it realized that state officers might, in fact, be antipathetic to the vindication of those rights; and it believed that these failings extended to the state courts.") Plaintiff's right to a federal forum for adjudication of his federal constitutional claims is guaranteed by the statute itself and reaffirmed by *First Choice:* "Section 1983 guarantees a federal forum for plaintiffs who claim unconstitutional treatment at the hands of state officials. Requiring plaintiffs to exhaust state court remedies before they may avail themselves of § 1983's promise, we have said, would 'hollow' out the statute." *First Choice*, slip op. at 18–19. The Supreme Court has "already rejected the notion that a litigant must exhaust available state court remedies before seeking to vindicate its federal constitutional rights in federal court under § 1983." *Id.* at 18.

11. Sovereign immunity does not bar this action. Plaintiff sues Defendants Slack and Staines in their official capacities for prospective declaratory and injunctive relief against the threatened enforcement of unconstitutional state laws — the paradigmatic case authorized by *Ex parte Young*, 209 U.S. 123 (1908), and confirmed for state attorney-discipline officials by *Supreme Court of Virginia v. Consumers Union of United States, Inc.*, 446 U.S. 719 (1980). Both

5

Defendants have, by Connecticut Practice Book rule, the requisite "connection with the enforcement" of the challenged rules. *Ex parte Young*, 209 U.S. at 157. Defendant Staines, as Chief Disciplinary Counsel under Practice Book § 2-34A, is the "disciplinary counsel" charged by Practice Book § 2-39 with obtaining certified copies of foreign discipline orders and filing them with the Superior Court to initiate reciprocal-discipline proceedings, and is also the State's principal prosecutorial officer for attorney misconduct generally, including independent disciplinary proceedings predicated on foreign conduct. Defendant Slack, as Statewide Bar Counsel under Practice Book § 2-34, has the duty to receive information from the national disciplinary data bank concerning the discipline of Connecticut-admitted attorneys in other jurisdictions, to report Connecticut-imposed discipline to the national data bank, and to assist the Statewide Grievance Committee in its disciplinary functions. Both Defendants are amenable to *Ex parte Young* suit.

12.     This case is distinguishable from *Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021), in which the Supreme Court held that state-court judges and clerks are not proper defendants in § 1983 actions challenging state laws they merely adjudicate but do not enforce. Defendants Slack and Staines do not adjudicate; they enforce. Practice Book § 2-39 charges "the disciplinary counsel" — Defendant Staines and the disciplinary counsel under his supervision — with the affirmative duty to obtain certified copies of foreign discipline orders and file them with the Superior Court, thereby initiating the reciprocal-discipline proceeding. Practice Book § 2-34A charges Chief Disciplinary Counsel with prosecuting attorney-misconduct cases as a party-in-interest before reviewing committees and the Superior Court. Practice Book § 2-34 charges Statewide Bar Counsel with administrative responsibilities related to the national disciplinary data bank, including reporting Connecticut discipline outward and receiving information about Connecticut-admitted attorneys' discipline in other jurisdictions. The Defendants' role is functionally aligned with that of the state-bar-counsel defendant in *Consumers Union*, 446 U.S. at 736–37, where the Supreme Court held that state attorney-disciplinary prosecutors are proper *Ex parte Young* defendants because they are "empowered to enforce" the challenged rules.

6

13.     This case is also distinguishable from *Cerame v. Slack*, 123 F.4th 72 (2d Cir. 2024), on the *Ex parte Young* analysis. *Cerame* challenged the constitutionality of CT RPC 8.4(7) — the harassment-and-discrimination rule — under which the enforcement role is mediated through grievance-panel screening and Statewide Grievance Committee review under Practice Book § 2-32 *et seq.*, before any presentment is filed. The case presently pending on remand before Judge Williams in this District (*Cerame v. Slack*, No. 3:21-cv-01502-OAW) addresses the question of whether the *Ex parte Young* connection-to-enforcement requirement is satisfied as to the more diffuse screening role. Plaintiff here challenges a different procedure with a different enforcement profile: Practice Book § 2-39 reciprocal discipline. Under § 2-39 there is no grievance screening, no probable-cause review, and no investigatory discretion. Disciplinary Counsel receives notice of the foreign discipline order and is required to obtain a certified copy and file it directly with the Superior Court. The foreign order serves as prima facie evidence, and the burden of disproving its findings rests on the respondent by clear and convincing evidence. The Disciplinary Counsel's role under § 2-39 is the most concentrated and direct prosecutorial role in the Connecticut disciplinary system. The *Ex parte Young* analysis here is therefore on materially stronger ground than in *Cerame*.

14.     Venue is proper in the District of Connecticut under 28 U.S.C. § 1391(b)(1) and (b)(2). Both Defendants are officials of the State of Connecticut who reside, in their official capacities, in this District. The substantial part of the events or omissions giving rise to the claim — Defendants' authority to enforce the challenged rules against Plaintiff in Connecticut, and Plaintiff's intended Connecticut petitioning activity that has been chilled — occurs in this District.

## PARTIES

15.     Plaintiff Thomas Melone is a citizen of the State of Florida. He is an attorney admitted to practice law in eight United States jurisdictions: California, Connecticut, Florida, Massachusetts, New Jersey, New York, Pennsylvania, and Vermont. He has been a member of the Connecticut bar in good standing at all relevant times. He was first admitted to practice in New Jersey in 1983 and has practiced continuously since. No formal disciplinary proceeding has ever

been initiated against Plaintiff in Connecticut, California, Florida, Massachusetts, New Jersey, New York, or Pennsylvania. Although disciplinary complaints have been submitted against Plaintiff in connection with his contested regulatory and litigation work in Vermont, none has previously been advanced to a formal proceeding except the one currently pending. The pending Vermont proceeding (PRB Case No. 120-2025) is the first disciplinary matter ever to proceed past screening and result in a formal Petition of Misconduct against Plaintiff in any of the eight jurisdictions in which he is licensed. In addition to his legal practice, Plaintiff is a developer, owner, and operator of renewable-energy generation facilities through entities he controls, including in the State of Connecticut, where he has identified ongoing and prospective renewable-energy project opportunities and follows pending PURA and DEEP proceedings.

16.    Defendant Christopher L. Slack is the Statewide Bar Counsel of the State of Connecticut. He is sued in his official capacity only. His office is located at 999 Asylum Avenue, Fifth Floor, Hartford, Connecticut 06105. As Statewide Bar Counsel under Practice Book § 2-34, Defendant Slack has the duty to report to the national disciplinary data bank such information as is officially reported to him concerning Connecticut attorneys whose unethical conduct has resulted in disciplinary action, to receive and maintain information forwarded to him by the national disciplinary data bank concerning the discipline of Connecticut-admitted attorneys in other jurisdictions (including any Vermont discipline imposed on Plaintiff), to receive and maintain records forwarded to him by clerks of court, and to assist the Statewide Grievance Committee and reviewing committees in carrying out their disciplinary duties. Defendant Slack is presently named in his official capacity in *Cerame v. Slack*, No. 3:21-cv-01502-OAW (D. Conn.), pending on remand before Judge Omar A. Williams.

17.    Defendant Brian Staines is the Chief Disciplinary Counsel of the State of Connecticut. He is sued in his official capacity only. His office is located at 100 Washington Street, Second Floor, Hartford, Connecticut 06106. As Chief Disciplinary Counsel under Practice Book § 2-34A, Defendant Staines is the "disciplinary counsel" charged by Practice Book § 2-39(a) with obtaining a certified copy of any foreign discipline order entered against a Connecticut-admitted

attorney and filing it with the Superior Court, thereby initiating reciprocal-discipline proceedings against the attorney. He also has the duty to investigate complaints of attorney misconduct generally, to prosecute presentments before reviewing committees of the Statewide Grievance Committee, and to appear as a party in attorney-discipline matters in the Connecticut Superior Court. Defendant Staines additionally has authority to initiate independent investigations of attorney conduct based on information drawn from foreign-jurisdiction proceedings.

18.    Defendants Slack and Staines are sued in their official capacities only. Plaintiff seeks no relief against them personally. No claim is asserted against any judicial officer of the State of Connecticut.

19.    Pursuant to 28 U.S.C. § 2403(b), Plaintiff will serve a copy of this Complaint on the Connecticut Attorney General. Plaintiff has provided pre-filing notice of this action to the Connecticut Attorney General to facilitate any decision by the State to intervene.

## FACTUAL BACKGROUND

### A.  Plaintiff's Professional Background and Connecticut Licensure.

20.    Plaintiff is a forty-year-licensed attorney whose career centers on energy, environmental, and regulatory law. He has practiced before federal and state courts and regulatory bodies in eight jurisdictions, including the United States Court of Appeals for the Second Circuit, the United States District Courts in Connecticut, the Southern District of New York, the District of Massachusetts, the District of Vermont, and others; the Federal Energy Regulatory Commission; and the public utility commissions of multiple states.

21.    Plaintiff is the principal of Allco Finance Limited, a solar-energy development company, and of various special-purpose entities that own and operate solar generation facilities in several states. Plaintiff routinely participates as a developer, owner, intervenor, and party in renewable-energy regulatory proceedings and in state and federal litigation arising from such proceedings.

22.    Plaintiff has maintained his Connecticut bar license in good standing for many years. He has practiced before Connecticut state and federal courts and has participated in

9

Connecticut regulatory matters affecting renewable-energy development. He follows pending dockets before the CT PURA and CT DEEP and has identified ongoing and prospective opportunities to file comments, motions, requests for declaratory ruling, and petitions for reconsideration in those bodies.

23.    Plaintiff's regulatory and advocacy work in renewable energy frequently involves contested positions and adverse parties. Plaintiff has, on multiple occasions, taken public positions critical of utility ratemaking practices, of agency policy decisions, of municipal land-use determinations, and of legislative proposals concerning renewable-energy programs. Such positions are the substance of his work; they are also the substance of the Vermont charges. Adverse interests have responded by litigation, by regulatory opposition, and now — through the Vermont Petition — by disciplinary complaint.

24.    Plaintiff has at all relevant times complied with the Rules of Professional Conduct of each jurisdiction in which he practices, including Connecticut. None of the conduct giving rise to the Vermont Petition would, in Plaintiff's reasonable understanding, violate any provision of the Connecticut Rules of Professional Conduct. But each Connecticut Rule challenged in this action is broad enough and vague enough that the Vermont enforcement officials' theory of misconduct — if reduced to a Vermont disciplinary order and presented in Connecticut under § 2-39 — would be argued by a reasonable Connecticut prosecutor to support reciprocal discipline. That is the credible-threat predicate that creates Plaintiff's standing here.

**B.  The Vermont Disciplinary Proceeding as the Credible-Threat Predicate.**

25.    On September 26, 2025, Disciplinary Counsel Michael F. Hanley ("Hanley"), purporting to act as Conflict Disciplinary Counsel of the Vermont Professional Responsibility Board, filed a Petition of Misconduct against Plaintiff in what had already been designated as PRB Case No. 120-2025. The Vermont Petition charges Plaintiff with eight counts of attorney misconduct under nine Vermont Rules of Professional Conduct: VRPC 3.1, 3.3(a)(1), 3.5(b)(1), 3.5(d), 4.2, 4.3, 4.4(a), 4.5, and 8.4(d).

10

26.     Each of the eight counts in the Vermont Petition rests entirely on documents Plaintiff filed with, or sent to, governmental entities — petitioning activity at the core of First Amendment protection. The Petition charges Plaintiff with misconduct arising from: (i) filings made with the Vermont Public Utility Commission in proceedings concerning his solar-energy development projects in Bennington, Vermont; (ii) testimony given before the Vermont Public Utility Commission; (iii) communications with elected officials of the Town of Bennington concerning Town governance, planning, and policy; (iv) dissemination to a public official of public comments submitted to the Vermont General Assembly's House Committee on Energy and Digital Infrastructure regarding pending legislation; (v) pleadings filed in the Vermont state courts; (vi) complaints and pleadings filed in multiple federal cases in the United States District Court for the District of Vermont, including the seven federal cases identified by docket number in Count VIII of the Petition for purposes of the cumulative-pattern theory; and (vii) Plaintiff's written responses to Vermont Disciplinary Screening Counsel in the disciplinary proceeding itself, including responses to inquiries during the screening phase of PRB Case No. 120-2025.

27.     The Vermont disciplinary complaint underlying PRB Case No. 120-2025 was filed by attorney Merrill Bent, an active litigation adversary of Plaintiff in matters pending before the Vermont Public Utility Commission and the Town of Bennington. Bent simultaneously chairs the Vermont Judicial Conduct Board. Vermont Disciplinary Counsel Jon Alexander, who reports directly to Bent in his role as Special Counsel to the Judicial Conduct Board, recused himself from the matter on grounds of that direct conflict. Hanley, a former PRB Chair who represents solar developers competing with Plaintiff's projects, was thereafter purportedly appointed Conflict Disciplinary Counsel by PRB Chair Carolyn Anderson — who herself had pre-existing adversarial relationships with Plaintiff through her former positions at Green Mountain Power Corporation and who subsequently recused herself from the matter on conflict grounds. The appointment of Hanley was itself the subject of internal PRB inquiry by the initial Hearing Panel Chair, Mimi Brill, who twice wrote to Anderson seeking confirmation that the appointment was valid; Brill was

then forced to recuse herself when Hanley, alerted by *ex parte* communication from Anderson, filed a motion to recuse her.

28.    Plaintiff filed an action in the United States District Court for the District of Vermont on February 18, 2026 — *Melone v. Hanley et al.*, No. 2:26-cv-38 (D. Vt.) — challenging the Vermont disciplinary proceeding directly on First, Fifth, and Fourteenth Amendment grounds. That action is presently pending. Defendants in that action moved to dismiss on *Younger*-abstention grounds; Plaintiff filed his opposition on May 4, 2026; the motion remains pending. Plaintiff in that action has also filed a motion for limited expedited discovery on *Younger* exceptions, presently pending. The Vermont action seeks declaratory and injunctive relief against the Vermont proceeding itself; this action seeks declaratory and injunctive relief against the threatened use of any Vermont disciplinary order to support a Connecticut § 2-39 reciprocal-discipline presentment.

29.    The Vermont charges, if reduced to a Vermont disciplinary order, would constitute foreign discipline under Connecticut Practice Book § 2-39. The credible threat that such an order will be entered — given the conflicted appointment chain, the irregularities in the probable-cause process, the documentary deficiencies in the charging affidavit, the documented retaliatory animus by the complainant and the charging official, and the documented structural bias at every level of the Vermont disciplinary apparatus — is itself, paradoxically, a source of constitutional injury rather than mitigation. Regardless of whether the Vermont order is ultimately valid, its mere entry triggers § 2-39's prima-facie-evidence mechanism in Connecticut. The credible threat exists today.

30.    The Vermont Petition charges Plaintiff with the following speech and petitioning activity, organized by First Amendment category, that Plaintiff intends to continue undertaking in Connecticut and that would, if the Connecticut analog rules are applied as the Vermont enforcement officials apply the Vermont rules, expose him to reciprocal sanction under § 2-39 or to independent Connecticut disciplinary action:

a.    *Filings before a state public utility regulator.* Vermont Petition Counts I, III, and IV charge Plaintiff with violations of VRPC 3.3(a)(1), 4.3 (per Petition; conduct described is

12

candor-to-tribunal), and 8.4(d) based on comments filed with the Vermont Public Utility Commission on January 10 and January 29, 2025. The Vermont theory treats Plaintiff's regulatory advocacy — including assertions of potential civil RICO violations against the Town of Bennington, characterizations of the expiration of the Town Plan, and statements concerning the cover-up of governmental misconduct — as actionable misrepresentations to a tribunal. Plaintiff intends to continue, and has refrained from, filings of the same character before the Connecticut Public Utilities Regulatory Authority and before other state utility regulators in jurisdictions where he is licensed and active, including the Massachusetts Department of Public Utilities, and the California Public Utilities Commission. The applicable Connecticut rules — CT RPC 3.1, 3.3(a)(1), 3.5(2), 4.4(a), and 8.4(4) — would be charged on the same theory in any possible Connecticut reciprocal-discipline proceeding.

b. *Communications with government officials.* Vermont Petition Count VII charges Plaintiff with violation of VRPC 4.2 based on communications with elected officials of the Town of Bennington regarding the Town's official conduct. The Vermont theory treats Plaintiff's correspondence with public officials about public matters as actionable communication with a represented party. Plaintiff intends to continue, and has refrained from, communications of the same character with Connecticut elected officials and Connecticut agency officials. CT RPC 4.2 would be charged on the same theory.

c. *Pre-litigation and litigation communications.* Vermont Petition Counts I, II, V, and VIII charge Plaintiff with violations of VRPC 4.5, 4.4(a), and 8.4(d) based on communications referring to potential civil RICO claims against the Town of Bennington, communications with potential witnesses regarding issues to be raised in a deposition and challenges to Bennington's approval of redevelopment project. The Vermont theory treats such pre-litigation and litigation communications as actionable threats. Plaintiff intends to continue, and has refrained from, communications of the same character in Connecticut. CT RPC 3.4(7) would be charged on the same theory in any Connecticut reciprocal-discipline proceeding.

d.    *Dissemination to Vermont PUC chair of public comments to legislative committees.* Vermont Petition Count IV charges Plaintiff with violation of VRPC 3.5(b)(1) based on an email copied to the Chair of the Vermont Public Utility Commission. Although Count IV was not properly listed in the Probable Cause Decision rendered in PRB 120-2025, it remains actively charged. The Vermont theory treats Plaintiff's dissemination of public comments to a legislative committee as actionable *ex parte* communications. Plaintiff intends to continue, and has refrained from, communications of the same character with Connecticut regulatory officials and Connecticut legislative committees. CT RPC 3.5(2) would be charged on the same theory.

e.    *Pleadings asserting jurisdictional and substantive positions in court.* Vermont Petition Counts V and VI charge Plaintiff with violations of VRPC 3.1, 3.3(a)(1), and 4.4(a) based on pleadings filed in the Vermont Environmental Division and in Vermont state and federal courts. The Vermont theory treats unsuccessful jurisdictional arguments and contested legal contentions as actionable false statements or frivolous filings. Plaintiff intends to continue, and has refrained from, filings of the same character in Connecticut state and federal courts. CT RPC 3.1 and 3.3(a)(1) would be charged on the same theory.

f.    *Cumulative pattern theory.* Vermont Petition Count VIII charges Plaintiff with violation of VRPC 8.4(d) (and seeks disbarment) based on a "cumulative pattern" theory drawn from each of the underlying counts. The theory aggregates protected petitioning activity into a single "pattern" of professional misconduct. CT RPC 8.4(4) would be charged on the same theory in any Connecticut reciprocal-discipline proceeding.

**C. The Connecticut Practice Book § 2-39 Reciprocal-Discipline Mechanism.**

31.    Connecticut Practice Book § 2-39, captioned "Reciprocal Discipline," creates an expedited reciprocal-discipline procedure that applies when an attorney admitted in Connecticut has been disciplined by an authority in another jurisdiction. Under § 2-39(a), upon being informed that a Connecticut-admitted lawyer has been disciplined in another jurisdiction, Disciplinary Counsel shall obtain a certified copy of the foreign discipline order and file it with the Superior Court for the judicial district wherein the lawyer maintains an office for the practice of law in

14

Connecticut, or, if the lawyer has no such office, with the Superior Court for the judicial district of Hartford. Under § 2-39(b), upon receipt of the certified copy of the order, the court directs the lawyer to file within thirty days an answer admitting or denying the foreign action and setting forth, if any, reasons why commensurate action in Connecticut would be unwarranted. The Superior Court then considers the matter on the foreign order and the response.

32.    Section 2-39 contains three features that materially distinguish reciprocal discipline from ordinary disciplinary proceedings under the Connecticut Rules:

a.    *Prima facie evidence.* Under § 2-39(b), the certified copy of the foreign discipline order constitutes "prima facie evidence that the order of the other jurisdiction entered and that the findings contained therein are true." Conn. P.B. § 2-39(b). The respondent does not have an opportunity to relitigate the underlying conduct as a matter of right; the foreign findings are presumptively binding on the Connecticut court, subject only to the limited defenses enumerated in § 2-39(c).

b.    *Clear-and-convincing burden on respondent.* Under § 2-39(c), upon receipt of the certified copy of the foreign order, the Superior Court "shall take commensurate action unless it is found that the respondent has established by clear and convincing evidence" one of five enumerated defenses: (1) that the procedure in the predicate matter was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; (2) that there was such infirmity of proof establishing the misconduct in the predicate matter as to give rise to the clear conviction that the Connecticut court could not, consistent with its duty, accept as final the conclusion on that subject; (3) that the discipline imposed would result in grave injustice; (4) that the misconduct established in the predicate matter warrants substantially different discipline in Connecticut; or (5) that the reason for the original transfer to inactive disability status no longer exists. This is an extraordinary procedural posture: the respondent must affirmatively establish, by clear and convincing evidence, the existence of one of these limited defenses, against findings that are presumed prima facie true.

15

c.      *Concentrated prosecutorial role of Disciplinary Counsel.* Section 2-39 collapses the ordinary multi-stage Connecticut disciplinary process — grievance panel, Statewide Grievance Committee review, reviewing committee — into a single proceeding initiated by Disciplinary Counsel filing the certified copy of the foreign discipline order directly with the Superior Court. There is no grievance-panel screening, no probable-cause finding, and no Statewide Grievance Committee review. Disciplinary Counsel acts directly, without intermediaries, in the prosecutorial-enforcement role that *Ex parte Young* and *Consumers Union* contemplate. The role under § 2-39 is more concentrated and more directly prosecutorial than the screening role challenged in *Cerame v. Slack*, 123 F.4th 72 (2d Cir. 2024).

33.      Section 2-39's structural design eliminates the procedural mechanisms that would, in an ordinary Connecticut disciplinary case, mediate Disciplinary Counsel's enforcement authority. The result is that § 2-39 functions as the most concentrated enforcement vehicle in Connecticut's disciplinary system. A Vermont disciplinary order, if entered, would trigger § 2-39 immediately. Plaintiff would then bear the burden of establishing by clear and convincing evidence — within the limited grounds the rule recognizes — that the Vermont proceeding was so deficient that Connecticut should not impose reciprocal discipline.

34.      The credible threat of § 2-39 enforcement is the constitutional injury Plaintiff suffers. He cannot avoid it by ceasing the conduct that gave rise to the Vermont charges, because the Vermont charges arise from conduct already complete and presently sub judice in Vermont. He cannot avoid it by waiting, because the Vermont proceeding is moving forward and any disciplinary order will trigger § 2-39 automatically. He cannot avoid it by exhausting the Connecticut procedural opportunity, because, as the Supreme Court held in *First Choice*, *supra*, exhaustion would itself create a preclusion trap that hollows out § 1983.

**D. The Ongoing Chilling Effect on Plaintiff's Intended Connecticut Petitioning Activity**

35.      Plaintiff has, since the filing of the Vermont Petition in September 2025, refrained from and modified speech and petitioning activity he would otherwise undertake before Connecticut governmental bodies. The chilling effect is concrete, ongoing, and documented in

16

Plaintiff's accompanying Affidavit in support of his Motion for Preliminary Injunction. In summary form:

36.     *Chilled petitioning before CT DEEP.* Plaintiff has refrained from filing comments, motions to intervene, requests for declaratory ruling, and challenges to procurement decisions in DEEP proceedings concerning renewable-energy programs, including the Shared Clean Energy Facilities ("SCEF") program, the Non-Residential Renewable Energy Solutions ("NRES") program, and competitive-procurement proceedings administered jointly by DEEP and the regulated EDCs. Plaintiff has identified specific DEEP proceedings in which he would have filed comments or motions but for the chilling effect of the Vermont Petition and the threat of reciprocal discipline. The conduct he has refrained from undertaking is substantially similar to the conduct charged in Vermont Petition Counts I, III, IV, and VI, and would, under the theories advanced by the Vermont enforcement officials, support charges under CT RPC 3.1, 3.3(a)(1), 3.5(2), 4.4(a), and 8.4(4).

37.     *Chilled petitioning before PURA.* Plaintiff has refrained from filing comments, motions, petitions for declaratory ruling, and applications for reconsideration in PURA proceedings concerning rate cases, renewable-energy program design (including the RRES, NRES, and SCEF programs), and other regulatory matters affecting renewable-energy developers. Plaintiff follows pending PURA dockets and has identified specific matters in which he would have filed in his individual or business capacity but for the chilling effect of the Vermont Petition and the threat of reciprocal discipline. The conduct he has refrained from undertaking is substantially similar to the conduct charged in Vermont Petition Counts I and IV, including filings critical of agency action, communications with regulatory officials, and characterizations of utility or regulatory conduct.

38.     *Chilled petitioning regarding Connecticut utilities.* Plaintiff has refrained from filing complaints, comments, motions, and intervention petitions challenging the conduct of Connecticut's regulated electric distribution companies — Eversource Energy and The United Illuminating Company — including challenges to (i) the EDCs' compliance with PURA-approved program tariffs, (ii) the EDCs' implementation of DEEP-administered competitive procurements,

17

(iii) recent EDC decisions to decline DEEP-selected solar power-purchase agreements, and (iv) the EDCs' positions in pending PURA rate proceedings. Plaintiff has identified specific matters in which he would have undertaken petitioning activity in his individual, business, or representative capacity but for the chilling effect of the Vermont Petition and the threat of reciprocal discipline. The conduct he has refrained from undertaking is substantially similar to the conduct charged in Vermont Petition Counts I, II, V, VII, and VIII, including challenges to corporate conduct, communications referencing potential legal consequences, and aggressive regulatory advocacy.

39.     *Chilled communications with Connecticut elected officials and legislative committees.* Plaintiff has refrained from communicating with Connecticut elected officials (state legislators, members of the Energy and Technology Committee, municipal officials in Connecticut towns hosting renewable-energy projects) regarding renewable-energy policy, regulatory practice, and adverse-party conduct in regulatory proceedings. Plaintiff has refrained from submitting written comments to Connecticut legislative committees considering pending energy legislation, including House Bill 5340 of the 2026 session and other measures affecting renewable-energy procurement and program design. The conduct he has refrained from undertaking is substantially similar to the conduct charged in Vermont Petition Counts IV (regarding a Vermont legislative-committee comment) and VII (regarding Town-of-Bennington communications).

40.     The chilling effect is not speculative. It rests on a documented pattern in the Vermont proceeding in which seven categories of routine regulatory advocacy have been recharacterized as disciplinary offenses: (i) regulatory filings asserting governmental misconduct, (ii) regulatory testimony characterizing administrative-classification matters, (iii) communications with elected officials, (iv) communications with regulatory officials, (v) comments to legislative committees, (vi) pleadings asserting contested legal positions, and (vii) pre-litigation and litigation communications. Each of these categories arises routinely in Connecticut renewable-energy practice. Plaintiff's refraining from each category in Connecticut is a direct response to the Vermont enforcement pattern.

18

41.     The credible threat that Defendants will enforce the Connecticut Rules of Professional Conduct against the same categories of speech is heightened by two additional considerations. *First*, Practice Book § 2-39 reciprocal discipline operates automatically: it does not require the Connecticut authorities to form an independent view of whether Connecticut would have charged the conduct as misconduct in the first instance. Once a Vermont order is entered, § 2-39 makes that order prima facie evidence in Connecticut. *Second*, even apart from § 2-39, the Connecticut Office of Chief Disciplinary Counsel has authority under Practice Book § 2-32 *et seq.* to initiate independent disciplinary proceedings against Connecticut-licensed attorneys based on conduct occurring outside Connecticut. The pendency of the Vermont charges has placed Plaintiff's conduct, and conduct directly related to his Connecticut activity, on the public record in a manner that creates an independent risk of Connecticut-originated complaint.

### E.  Relationship to *Cerame v. Slack.*

42.     *Cerame v. Slack*, 123 F.4th 72 (2d Cir. 2024), is presently pending on remand before Judge Omar A. Williams of this District, *Cerame v. Slack*, No. 3:21-cv-01502-OAW. The Second Circuit held that the Connecticut-licensed-attorney plaintiffs in *Cerame* had Article III standing to bring a pre-enforcement First Amendment challenge to CT RPC 8.4(7) — the harassment-and-discrimination rule adopted in 2022. The court rejected the District Court's dismissal for lack of standing and remanded for further proceedings.

43.     *Cerame*'s standing analysis directly supports Plaintiff's standing here. The Second Circuit held that (i) the credible threat of disciplinary action under a content-based bar rule constitutes injury in fact for First Amendment pre-enforcement purposes, (ii) a "blanket First Amendment carve-out" embedded in the bar rule is insufficient to eliminate the constitutional injury because "speakers can still be required to defend the constitutionality of their speech and are at risk of 'after-the-fact liability,'" *Cerame*, 123 F.4th at 85, (iii) administrative action, "even when discipline does not ensue, may give rise to harm sufficient to justify pre-enforcement review," *id.* at 87 (internal citation and quotation omitted), and (iv) the credible-threat analysis is not limited to enforcement initiated by state officials — it extends to the threat from private

complainants, *id.* Each of these principles applies to Plaintiff's challenge to the Connecticut analog rules of the Vermont rules he is presently charged under.

44. Plaintiff's case differs from *Cerame* in two respects, both of which strengthen Plaintiff's standing and his entitlement to relief under *Ex parte Young*. *First*, the rules Plaintiff challenges are the rules under which he is actually being charged, in real time, in a parallel jurisdiction. Plaintiff's credible threat is not abstract; it is documented in a 23-page Petition of Misconduct, a 9-page motion to dismiss filed in the parallel Vermont federal proceeding, and the public record of PRB Case No. 120-2025. *Second*, the enforcement mechanism is concentrated. Reciprocal discipline under Practice Book § 2-39 is the single most direct enforcement role in the Connecticut disciplinary system, and is more concentrated than the screening-counsel role challenged in *Cerame*. The *Ex parte Young* connection-to-enforcement requirement, even as interpreted in *Whole Woman's Health v. Jackson*, is satisfied on a more direct showing than that presented in *Cerame*.

45. The Connecticut Supreme Court's April 14, 2026 decision in *Judicial Branch v. CHRO*, No. SC 21148, addressing the constitutional dimensions of state regulation of attorney speech, does not foreclose this action. *Judicial Branch v. CHRO* concerns the structural relationship between the Connecticut Judicial Branch and the Commission on Human Rights and Opportunities. It does not address the federal-court jurisdiction *Ex parte Young* and § 1983 confer over state attorney-discipline officials in their prosecutorial-enforcement capacity. Federal courts retain an independent constitutional obligation to adjudicate § 1983 First Amendment challenges to state regulatory machinery, an obligation reaffirmed unanimously by the Supreme Court in *First Choice* on April 29, 2026, just two weeks after *Judicial Branch v. CHRO* was decided.

46. The enforcement of CT RPC 8.4(7) — the rule challenged in *Cerame* — is not at issue in this action. Plaintiff has not been charged with conduct that would implicate CT RPC 8.4(7), and Plaintiff does not seek to enjoin its enforcement. The constitutional questions concerning CT RPC 8.4(7) presently pending before Judge Williams will not be advanced or impaired by this Court's adjudication of the seven distinct rules challenged here.

20

**F.  Redressability of Plaintiff's Injuries by the Relief Requested**

47.      The declaratory and injunctive relief Plaintiff seeks would redress the constitutional injuries pleaded above. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992), establishes that Article III standing requires that the relief sought be "likely" to redress the injury. The redressability standard is satisfied here in multiple, mutually reinforcing ways. *First*, a declaratory judgment that the seven challenged Connecticut Rules of Professional Conduct cannot constitutionally be enforced against Plaintiff's intended Connecticut petitioning activity — and a corresponding declaratory judgment that Practice Book § 2-39 cannot constitutionally be used to import Vermont findings concerning that activity — would eliminate the credible threat that presently chills Plaintiff's intended Connecticut petitioning before PURA, DEEP, the General Assembly, the EDCs, and other Connecticut governmental bodies. As the Supreme Court unanimously held in *First Choice Women's Resource Centers, Inc. v. Davenport*, 608 U.S. ___ (Apr. 29, 2026), constitutional injury from a credibly threatened state regulatory demand exists "for as long as it remains outstanding." Slip op. at 12. A declaratory judgment removing that outstanding threat directly would redress the Plaintiff's chilling-effect injury. *Second*, a preliminary and permanent injunction barring Defendants Slack and Staines from initiating, prosecuting, or maintaining any §2-39 reciprocal-discipline proceeding against Plaintiff predicated on PRB Case No. 120-2025 would eliminate the threatened-enforcement injury directly. Defendant Staines, as Chief Disciplinary Counsel, is the official charged by Practice Book §2-39(a) with obtaining a certified copy of any foreign discipline order and filing it with the Superior Court; an injunction against him forecloses the principal §2-39 enforcement pathway. Defendant Slack, as Statewide Bar Counsel, receives information from the national disciplinary data bank concerning the discipline of Connecticut-admitted attorneys in other jurisdictions, including any Vermont discipline imposed on Plaintiff; an injunction against him forecloses the administrative pathway by which a Vermont order would be propagated into Connecticut's disciplinary apparatus. The relief is precisely targeted at the officials and the mechanism that produce the threatened injury.

21

48.     Plaintiff's redressability showing is not undermined by the theoretical possibility that other Connecticut discipline could arise from sources outside Defendants' control. Two doctrinal points support this conclusion. *First*, partial redressability is sufficient under Article III. *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982), holds that "a plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself." *Massachusetts v. EPA*, 549 U.S. 497, 525–26 (2007), confirms that incremental relief satisfies redressability — a plaintiff need not show that the relief sought would cure every dimension of the injury or eliminate every theoretical alternative threat. The relief Plaintiff seeks would eliminate the specific, imminent, and concrete injury arising from the §2-39 reciprocal-discipline mechanism and from the threatened application of the challenged Connecticut rules to Plaintiff's intended petitioning. That is the redressability Article III requires. *Second*, the relief Plaintiff seeks against the Connecticut rules and §2-39 would substantially eliminate any independent risk of Connecticut-originated complaints arising from the public record of the Vermont proceeding. A declaratory judgment that the challenged Connecticut rules cannot constitutionally reach Plaintiff's intended petitioning activity would establish, as a matter of federal constitutional law binding on the Connecticut disciplinary apparatus, that such activity is not actionable in Connecticut. Even if a private complainant were to attempt to initiate a Connecticut grievance against Plaintiff based on the same conduct, the declaratory judgment would foreclose the legal basis for any such proceeding. The relief sought is therefore not merely partially but substantially redressive of the full constitutional injury.

## CLAIMS FOR RELIEF

### Count I — CT RPC 3.1 (Meritorious Claims and Contentions)
*Facial and as-applied challenge under the First Amendment and 42 U.S.C. § 1983*

49.     Plaintiff repeats and re-alleges paragraphs 1 through 48 above as if fully set forth herein.

50.     CT RPC 3.1 provides in relevant part: "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing

22

so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law."

51.     CT RPC 3.1 regulates speech and petitioning activity. It applies to the content of pleadings, motions, and filings — the core First Amendment activity of petitioning the government for a redress of grievances. *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 388 (2011); *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) ("the right to petition extends to all departments of the Government").

52.     CT RPC 3.1 is constitutionally infirm because it sanctions petitioning activity that does not satisfy the constitutional minimum for sanctioning petitioning. Under controlling Second Circuit law binding in this District, petitioning activity may be sanctioned only where it is both (a) "objectively baseless" and (b) "intended to cause harm to the defendant through the use of the governmental *process* -- as opposed to the *outcome* of that process." *T.F.T.F. Capital Corp. v. Marcus Dairy, Inc.*, 312 F.3d 90, 93 (2d Cir. 2002) citing *Professional Real Estate Investors v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 60–61 (1993), (internal quotations omitted). Both prongs must be satisfied.

53.     CT RPC 3.1 is constitutionally infirm in two related respects. First, the rule lacks the subjective improper-purpose element that *T.F.T.F. Capital* and *Professional Real Estate Investors* require before petitioning activity may be sanctioned. Under *T.F.T.F. Capital* and *Professional Real Estate Investors*, the constitutional minimum for sanctioning petitioning requires both (a) objective baselessness and (b) subjective intent to harm an opposing party through the use of the governmental process. CT RPC 3.1 imposes discipline based on objective frivolousness alone, without inquiry into subjective improper purpose. The State may not constitutionally sanction petitioning that satisfies only one prong of the two-pronged standard. Second, as applied through reciprocal-discipline machinery imported from Vermont, CT RPC 3.1 has reached non-frivolous advocacy under the guise of frivolousness — specifically, the Vermont enforcement officials' mischaracterization of Plaintiff's potential civil RICO assertions against the Town of Bennington as frivolous, notwithstanding controlling Second Circuit authority

23

confirming that civil RICO applies to municipalities and that the assertion of such claims is non-frivolous. The as-applied infirmity is that CT RPC 3.1, operating through § 2-39 reciprocal discipline, would reach advocacy that is in fact non-frivolous but was characterized otherwise by Vermont enforcement officials applying the rule incorrectly.

54.    CT RPC 3.1 also fails the subjective improper-purpose element of the constitutional standard. The rule imposes discipline based on the lawyer's objective legal position alone, without inquiry into whether the lawyer intended to harm the opposing party through the use of the governmental process. *Professional Real Estate Investors*, *BE&K*, and *T.F.T.F.* establish that subjective intent to harm through process is a constitutionally required component of any sanction against petitioning activity. A rule that permits discipline without that element is not narrowly tailored to the constitutional standard.

55.    As applied to Plaintiff, CT RPC 3.1 would, under the theories advanced by the Vermont enforcement officials, support discipline for routine regulatory-advocacy filings whose only deficiency is that the advocate did not prevail on the merits. The Vermont theory under VRPC 3.1, applied to comparable Connecticut conduct, would permit a Connecticut presentment against any Connecticut-licensed attorney whose regulatory or court filing was dismissed for lack of jurisdiction or rejected on the merits. That is the freezing of First Amendment activity, not its regulation.

56.    Defendants have, by statute and rule, the authority and duty to enforce CT RPC 3.1 through Practice Book § 2-39 reciprocal discipline upon entry of a Vermont order containing the VRPC 3.1 finding charged in PRB Case No. 120-2025. The credible threat of that enforcement is present today and constitutes the constitutional injury this count seeks to remedy.

57.    Plaintiff seeks declaratory judgment that CT RPC 3.1 is unconstitutional on its face and as applied to him, and a preliminary and permanent injunction barring Defendants from enforcing CT RPC 3.1 against Plaintiff through Practice Book § 2-39 or otherwise based on the conduct charged in PRB Case No. 120-2025.

**Count II — CT RPC 3.3(a)(1) (Candor Toward the Tribunal)**
*Facial and as-applied challenge under the First Amendment and 42 U.S.C. § 1983*

58.    Plaintiff repeats and re-alleges paragraphs 1 through 48 above as if fully set forth herein.

59.    CT RPC 3.3(a)(1) provides in relevant part: "A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."

60.    CT RPC 3.3(a)(1) regulates speech based on its content: the prohibition turns on the truth or falsity of the statement made to the tribunal. Content-based speech regulations are presumptively unconstitutional and must satisfy strict scrutiny. *United States v. Alvarez*, 567 U.S. 709, 716–17 (2012); *Reed v. Town of Gilbert*, 576 U.S. 155, 163–64 (2015).

61.    The State has a compelling interest in preventing perjury and perjury-class falsehoods — sworn testimony before a tribunal that the tribunal has no independent means to verify. *United States v. Dunnigan*, 507 U.S. 87, 97 (1993); *In re Michael*, 326 U.S. 224, 227 (1945). That compelling interest is not in dispute.

62.    CT RPC 3.3(a)(1), however, sweeps far beyond perjury and perjury-class falsehoods. It captures any "false statement of fact or law" made to a tribunal — a category that includes routine legal assertions, jurisdictional allegations, contested legal positions, good-faith arguments for the extension or modification of existing law, and characterizations of administrative-classification matters. The application of the rule to these categories is not narrowly tailored to the perjury-class state interest because the speech in those categories does not pose the threat the perjury rule guards against. *Alvarez* itself distinguishes sworn testimony which "has the formality and gravity necessary to remind the witness that his or her statements will be the basis for official governmental action" from "lies not spoken under oath." 567 U.S. at 720–21. The rule is therefore not the least restrictive means of achieving the compelling interest.

63.    The Vermont enforcement officials' application of VRPC 3.3(a)(1) — the rule's Vermont analog — illustrates the constitutional infirmity. The Vermont Petition treats the following as actionable false statements of fact or law: (i) Plaintiff's jurisdictional assertions in

Vermont Environmental Division filings, (ii) Plaintiff's characterization of his land use in PUC testimony — where the PUC's "not credible" finding was a statutory-classification ruling concerning the agricultural definition under 30 V.S.A. § 248(a)(2), not a finding of factual falsity, and (iii) Plaintiff's characterizations of civil RICO law as applied to municipalities, despite controlling Second Circuit authority confirming that municipalities and their officials can be liable under civil RICO. *Gingras v. Think Finance, Inc.*, 922 F.3d 112, 124–25 (2d Cir. 2019). Each of these applications treats contested legal advocacy as actionable misrepresentation. CT RPC 3.3(a)(1), as it would be charged in any Connecticut reciprocal-discipline proceeding, would permit the same applications.

64.    Plaintiff seeks declaratory judgment that CT RPC 3.3(a)(1) is unconstitutional on its face and as applied to him, and a preliminary and permanent injunction barring Defendants from enforcing CT RPC 3.3(a)(1) against Plaintiff through Practice Book § 2-39 or otherwise based on the conduct charged in PRB Case No. 120-2025.

### Count III — CT RPC 3.4(7) (Threatening Criminal Charges)
*Facial and as-applied challenge under the First Amendment and 42 U.S.C. § 1983*

65.    Plaintiff repeats and re-alleges paragraphs 1 through 48 above as if fully set forth herein.

66.    CT RPC 3.4(7) provides: "A lawyer shall not: . . . (7) Present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter."

67.    CT RPC 3.4(7) regulates speech based on its content. The prohibition turns on whether the lawyer's speech act constitutes a threat of criminal prosecution. *Reed v. Town of Gilbert*, 576 U.S. 155, 163–64 (2015), triggers strict scrutiny. The State may assert an interest in preventing extortionate use of criminal-charge threats to coerce civil settlements; that interest, even if accepted as compelling, does not save the rule from constitutional infirmity.

68.    *Pleading in the alternative.* While the use of the "solely" qualifier in CT RPC 3.4(7) narrows the rule as compared to the Vermont counterpart, multiple constitutional infirmities still

exist, any of which is sufficient to establish injury for Article III purposes and to support relief on the merits:

69.    *Alternative one.* If CT RPC 3.4(7)'s "solely" qualifier is construed strictly to not reach Plaintiff's conduct, the constitutional injury lies in the rule's deployment to compel a defense in proceedings the rule does not authorize, and in the imposition of the burden of proof on Plaintiff to disprove the foreign findings under § 2-39's prima-facie-evidence framework.

70.    *Alternative two.* If CT RPC 3.4(7)'s "solely" qualifier is construed loosely — to encompass mixed-motive conduct where civil advantage is a primary or dominant purpose — the rule reaches Plaintiff's conduct and is unconstitutionally vague. The "solely" qualifier under the loose-construction reading provides no fair notice of what is prohibited because it requires the lawyer to predict, ex ante, how a future disciplinary tribunal will draw the primary-versus-secondary-motive line. *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972). The chilling effect is acute precisely because the rule's facial narrowness gives a false sense of safety: the lawyer who reads the rule as confined to "solely" civil-advantage threats may face discipline if the rule is loosely applied. Under this reading, the constitutional injury is the prohibition itself.

71.    *Alternative three.* If the rule is narrowed even further to require to involve unmistakable "do X or I will invoke criminal proceedings" conduct, the rule would still be vague and fail the constitutional minimum to be sanctionable of under *Gentile*'s equivalency of the Oliver Wendell Holmes' "clear and present danger" test. *Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991).

72.    CT RPC 3.4(7) under any construction the rule is not narrowly tailored to the asserted state interest. The rule sweeps across all references to criminal-charge consequences regardless of whether (i) the underlying criminal violation is well-founded in fact and law, (ii) the criminal matter is factually and legally related to the civil matter, or (iii) the speech occurs in a public petitioning context where the supposed coercive force is dissipated. The rule provides no safe harbor for petitioning activity directed to government officials. Compare ABA Formal Opinion 92-363 (1992) (noting that the Model Rules do not prohibit reference to criminal charges

where the criminal matter is related to the civil matter, the lawyer has a well-founded belief that both proceedings are warranted, and no improper influence is attempted).

73.    Plaintiff seeks declaratory judgment that CT RPC 3.4(7) is unconstitutional on its face and as applied to him, and a preliminary and permanent injunction barring Defendants from enforcing CT RPC 3.4(7) against Plaintiff through Practice Book § 2-39 or otherwise based on the conduct charged in PRB Case No. 120-2025.

**Count IV — CT RPC 3.5(2) (Ex Parte Communications)**
*Facial and as-applied challenge under the First Amendment and 42 U.S.C. § 1983*

74.    Plaintiff repeats and re-alleges paragraphs 1 through 48 above as if fully set forth herein.

75.    CT RPC 3.5 provides in relevant part: "A lawyer shall not: (1) Seek to influence a judge, juror, prospective juror or other official by means prohibited by law; (2) Communicate ex parte with such a person during the proceeding unless authorized to do so by law or court order . . . ."

76.    CT RPC 3.5(2) regulates speech based on its content and audience. The rule's reference to "such a person" refers back to CT RPC 3.5(1)'s enumeration of "a judge, juror, prospective juror or other official." The prohibition turns on (i) the identity of the audience — whether the recipient is one of the enumerated officials — and (ii) the temporal context — whether the communication occurs "during the proceeding." Both are content-based triggers under *Reed v. Town of Gilbert*, 576 U.S. 155, 163–64 (2015).

77.    CT RPC 3.5(2) is constitutionally infirm in four respects:

a.    *Lack of a clear-and-present-danger limiting principle.* Attorney-discipline rules implicating speech require a clear-and-present-danger showing to survive First Amendment review. *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1036 (1991); CT RPC 3.5(2) supplies no limiting principle; it is a categorical prohibition on *ex parte* communications regardless of whether any communication creates an actual threat to the integrity of the proceeding.

28

b.        *Vagueness in "other official" and "during the proceeding."* The rule's reach depends on two undefined elements. "Other official" — by reference to CT RPC 3.5(1) — is elastic. The rule does not say whether it captures legislators, executive officials, regulatory commissioners, or only adjudicative officials. The Supreme Court treats "quasi-judicial" status as a term of art subject to multi-factor analysis. *Cleavinger v. Saxner*, 474 U.S. 193, 200–06 (1985). "During the proceeding" similarly defies easy application outside formal litigation: the rule does not say whether it captures the rulemaking phase of an agency proceeding, the inter-decisional gap before a remand, or the pendency of a parallel proceeding involving the same parties. The rule fails *Grayned*'s fair-notice standard.

c.        *Overbreadth as applied to public written communications.* The classical *ex parte* concern — secret communications between counsel and the adjudicator that other parties cannot see and respond to — is not implicated when the communication is filed on a public docket or otherwise made public. A public written communication is, by definition, available to all parties; it creates no information asymmetry, no opportunity for influence outside the formal record, and no plausible threat to the tribunal's integrity. CT RPC 3.5(2) nevertheless captures such communications because the prohibition turns on the form of the contact rather than on whether the communication is in fact private.

d.        *Overbreadth as applied to copying a public official on otherwise-public communications.* The Vermont Petition charges as an actionable *ex parte* communication Plaintiff's copying of Vermont Public Utility Commission Chair Edward McNamara — a Vermont public official with a stake in the matter — on an email communication concerning a contested regulatory issue. The email was not a private contact with the adjudicator; it was a copy of an otherwise-public communication, and the copying of McNamara was the conduct treated as *ex parte*. This is not a private back-channel contact with a tribunal: a legislative committee is not a court or quasi-judicial body, and comments submitted to it are core Petition Clause activity, and copying a public official on an otherwise-public email is, by definition, not a private communication. A rule that captures the copying of a public official on a public communication,

or the submission of comments to a legislative committee, as *ex parte* communication with a tribunal is not narrowly tailored to any plausible state interest.

78.    As applied to Plaintiff, CT RPC 3.5(2) would, under the theories advanced by the Vermont enforcement officials, support discipline for Plaintiff's dissemination to a state public-utility-commission chair of Plaintiff's written comments to a legislative-committee distribution list concerning pending legislation. The conduct charged is paradigmatic public petitioning of regulatory and legislative bodies.

79.    Plaintiff seeks declaratory judgment that CT RPC 3.5(2) is unconstitutional on its face and as applied to him, and a preliminary and permanent injunction barring Defendants from enforcing CT RPC 3.5(2) against Plaintiff through Practice Book § 2-39 or otherwise based on the conduct charged in PRB Case No. 120-2025.

**Count V — CT RPC 4.2 (Communication With Person Represented by Counsel)**
***Facial and as-applied challenge under the First Amendment and 42 U.S.C. § 1983***

80.    Plaintiff repeats and re-alleges paragraphs 1 through 48 above as if fully set forth herein.

81.    CT RPC 4.2 provides in relevant part: "In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."

82.    CT RPC 4.2 regulates speech based on its audience and subject matter. The prohibition turns on (i) whether the communication is "about the subject of the representation" (subject-matter regulation) and (ii) whether the recipient is "represented by another lawyer" (audience regulation). Both are content-based triggers under *Reed v. Town of Gilbert*, 576 U.S. 155, 163–64 (2015).

83.    CT RPC 4.2's application to communications with government officials is constitutionally infirm under the Petition Clause framework of *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 388 (2011). The Petition Clause guarantees the right to address government officials

about matters of public concern. If CT RPC 4.2 is read to prohibit communications with such officials whenever litigation is pending or when a disciplinary complaint is filed, the rule operates to extinguish the Petition Clause guarantee. The rule must either be narrowed to exclude such communications or be held unconstitutional on its face.

84.    The constitutional infirmity is acute where the communications concern matters of public concern — town governance, regulatory policy, agency conduct — that the government official has authority to act upon in a non-litigation capacity. The official's status as a litigation "party" is a procedural artifact; the official's status as a public servant subject to public petitioning is the underlying constitutional reality. *Borough of Duryea* makes clear that the Petition Clause does not yield to procedural artifacts: "A petition conveys the special concerns of its author to the government and, in its usual form, requests action by the government to address those concerns." 564 U.S. at 388-389.

85.    CT RPC 4.2 is also unconstitutionally vague in its application to communications with government officials. The phrase "about the subject of the representation" provides no fair notice of what falls within and outside the rule's scope when the communication addresses public policy concerning the same general subject matter as pending litigation. *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972). A Connecticut-licensed attorney communicating with a Connecticut municipal official, regulatory commissioner, or legislator about a matter of public policy cannot know in advance whether the communication will be characterized as "about the subject of the representation" of some adverse party in pending litigation.

86.    As applied to Plaintiff, CT RPC 4.2 would, under the theories advanced by the Vermont enforcement officials, support discipline for communications with Town of Bennington selectmen and elected officials regarding municipal governance, with Vermont legislative-committee members regarding pending energy legislation, and with regulatory officials regarding regulatory practice. The conduct charged is core Petition Clause activity directed to public servants in their official capacities about matters of public concern. The same applications would issue in Connecticut: under CT RPC 4.2 read as the Vermont officials read VRPC 4.2, Plaintiff's intended

communications with Connecticut state legislators, with members of the Energy and Technology Committee, with municipal officials in Connecticut towns hosting renewable-energy projects, and with PURA and DEEP officials concerning pending dockets and policy matters would all be subject to discipline.

87.    Plaintiff seeks declaratory judgment that CT RPC 4.2 is unconstitutional on its face and as applied to him, and a preliminary and permanent injunction barring Defendants from enforcing CT RPC 4.2 against Plaintiff through Practice Book § 2-39 or otherwise based on the conduct charged in PRB Case No. 120-2025.

**Count VI — CT RPC 4.4(a) (Respect for Rights of Third Persons)**
***Facial and as-applied challenge under the First Amendment and 42 U.S.C. § 1983***

88.    Plaintiff repeats and re-alleges paragraphs 1 through 48 above as if fully set forth herein.

89.    CT RPC 4.4(a) provides: "In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person."

90.    CT RPC 4.4(a) regulates speech and petitioning activity based on its content and effect. The prohibition turns on (i) whether the means used "embarrass" a third person — an effect-based content trigger — and (ii) whether the lawyer's purpose is to embarrass, delay, or burden — a motive-based viewpoint trigger. Both are content-based regulations under *Reed v. Town of Gilbert*, 576 U.S. 155, 163–64 (2015).

91.    CT RPC 4.4(a) is unconstitutionally vague. The terms "means," "substantial purpose," "embarrass," "delay," and "burden" are undefined. The rule provides no objective standard by which a lawyer can determine in advance whether a particular filing, communication, or investigative step is "means that have no substantial purpose other than to embarrass" a third person. The rule's reach is determined entirely by the after-the-fact judgment of the disciplinary tribunal — the *Grayned* fair-notice problem in acute form. *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972).

32

92.     CT RPC 4.4(a) is also overbroad. Aggressive regulatory advocacy frequently has the effect of embarrassing third persons — government officials whose conduct is exposed, corporate actors whose practices are challenged, witnesses whose credibility is impeached. The First Amendment protects such advocacy regardless of its embarrassing effect on its targets. *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 55 (1988) ("[T]he fact that society may find speech offensive is not a sufficient reason for suppressing it.") (quoting *FCC v. Pacifica Foundation*, 438 U.S. 726, 745–46 (1978) (plurality op.)). A rule that captures advocacy whose only deficiency is its effect on third persons cannot survive First Amendment scrutiny.

93.     As applied to Plaintiff, CT RPC 4.4(a) would, under the theories advanced by the Vermont enforcement officials, support discipline for Plaintiff's regulatory-advocacy filings that exposed alleged misconduct by Town officials, his communications with potential witnesses and his pleadings characterizing the conduct of regulatory adversaries. The Vermont charges treat such advocacy as actionable conduct whose only "substantial purpose" was to "embarrass" the targets — a characterization indistinguishable from the substance of the advocacy itself. The same applications would issue in Connecticut under CT RPC 4.4(a).

94.     Plaintiff seeks declaratory judgment that CT RPC 4.4(a) is unconstitutional on its face and as applied to him, and a preliminary and permanent injunction barring Defendants from enforcing CT RPC 4.4(a) against Plaintiff through Practice Book § 2-39 or otherwise based on the conduct charged in PRB Case No. 120-2025.

### Count VII — CT RPC 8.4(4) (Conduct Prejudicial to the Administration of Justice)
*Facial and as-applied challenge under the First Amendment and 42 U.S.C. § 1983*

95.     Plaintiff repeats and re-alleges paragraphs 1 through 48 above as if fully set forth herein.

96.     CT RPC 8.4 provides in relevant part: "It is professional misconduct for a lawyer to: . . . (4) Engage in conduct that is prejudicial to the administration of justice . . . ."

97.     CT RPC 8.4(4) regulates speech based on its content. The rule is applied — and would be applied in any Connecticut reciprocal-discipline proceeding — to the content of

33

pleadings, filings, communications, and statements. The Vermont Petition charges Plaintiff with violation of VRPC 8.4(d) — the Vermont analog — based entirely on speech acts: written filings, oral testimony, and communications. The same applications would issue under CT RPC 8.4(4).

98.    CT RPC 8.4(4) is unconstitutionally vague in its core operative phrase. The term "conduct that is prejudicial to the administration of justice" provides no objective standard. It does not define "prejudicial," does not define "administration of justice," and does not require a showing of clear-and-present danger or any other limiting principle. The rule's content is determined entirely by the disciplinary tribunal's after-the-fact characterization of the lawyer's speech or conduct as falling within the phrase. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972), holds that a regulation of expression must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited." CT RPC 8.4(4) fails that requirement.

99.    CT RPC 8.4(4) is also content- and viewpoint-discriminatory. The phrase "prejudicial to the administration of justice" can only be applied through the discriminatory mechanism of viewpoint discrimination — the disciplinary tribunal must form a viewpoint about which speech aids the "administration of justice" and which prejudices it. *Iancu v. Brunetti*, 588 U.S. 388 (2019), and *Matal v. Tam*, 582 U.S. 218 (2017), establish that viewpoint discrimination in professional regulation is *per se* unconstitutional.

100.    CT RPC 8.4(4) is, in addition, overbroad as applied to all eight categories of conduct charged in the Vermont Petition. The Petition charges VRPC 8.4(d) in every count. The Vermont theory treats Plaintiff's PUC filings, his communications with public officials, his comments to a legislative committee, his pleadings in state and federal court, and his pre-litigation communications all as "prejudicial to the administration of justice." That theory of the rule reaches the entire universe of zealous regulatory advocacy. A rule with that reach cannot be narrowly tailored to any constitutional state interest because there is no narrow tailoring possible: the rule operates as a residual catch-all that absorbs whatever the disciplinary tribunal disapproves.

101.    The Vermont enforcement officials' Count VIII — which seeks Plaintiff's disbarment based on a "consistent pattern" of VRPC 8.4(d) violations — is the most aggressive

34

application of the rule. The pattern theory aggregates each underlying speech act into a single "pattern" of misconduct. Where the underlying speech is constitutionally protected, the pattern theory does not cure the constitutional infirmity; it multiplies it. Cumulating constitutionally protected conduct into a "pattern" of professional misconduct is itself a First Amendment violation. CT RPC 8.4(4), as it would be charged under the Vermont theory, would support the same pattern-based escalation.

102. The Vermont Petition's Count V also relies on VRPC 3.5(d) — Vermont's rule prohibiting "undignified or discourteous conduct" toward a tribunal. Connecticut has no analog to VRPC 3.5(d). CT RPC 3.5, captioned "Impartiality and Decorum," provides only that a lawyer shall not: "(1) Seek to influence a judge, juror, prospective juror or other official by means prohibited by law; (2) Communicate ex parte with such a person during the proceeding unless authorized to do so by law or court order; (3) Communicate with a juror or prospective juror after discharge of the jury if: (a) the communication is prohibited by law or court order; (b) the juror has made known to the lawyer a desire not to communicate; or (c) the communication involves misrepresentation, coercion, duress or harassment; or (4) Engage in conduct intended to disrupt a tribunal or ancillary proceedings such as depositions and mediations." Conn. R. Prof. Conduct 3.5. None of the four enumerated subsections (1)–(4) tracks VRPC 3.5(d)'s "undignified or discourteous conduct" standard. CT RPC 3.5(4) — the closest possible analog — prohibits only conduct "intended to disrupt a tribunal," a meaningfully narrower standard that requires (a) intent and (b) actual disruption of tribunal proceedings, neither of which is required by VRPC 3.5(d). The conduct VRPC 3.5(d) is being applied to in Vermont — Plaintiff's filings characterizing the conduct of his regulatory adversaries — would be subject to discipline in Connecticut, if at all, only under CT RPC 8.4(4)'s residual catch-all. This count therefore absorbs the constitutional defects in the Vermont Petition's Count V as well as the constitutional defects in the broader VRPC 8.4(d) charges. The chilling effect of CT RPC 8.4(4) is correspondingly broader than its facial scope would suggest.

103.    Plaintiff seeks declaratory judgment that CT RPC 8.4(4) is unconstitutional on its face and as applied to him, and a preliminary and permanent injunction barring Defendants from enforcing CT RPC 8.4(4) against Plaintiff through Practice Book § 2-39 or otherwise based on the conduct charged in PRB Case No. 120-2025.

**Count VIII — Unconstitutional Conditions**
***Facial and as-applied challenge under the First, Fifth, and Fourteenth Amendments and 42 U.S.C. § 1983***

104.    Plaintiff repeats and re-alleges paragraphs 1 through 48 above as if fully set forth herein.

105.    The unconstitutional-conditions doctrine prohibits the government from "deny[ing] a benefit to a person on a basis that infringes his constitutionally protected interests." *Sheetz v. County of El Dorado*, 601 U.S. 267, 275 (2024) (quoting *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)). The doctrine applies "when the government attempts to 'exact waivers of rights as a condition of benefits, even when those benefits are fully discretionary.'" *Stavrianoudakis v. United States Fish & Wildlife Service*, 108 F.4th 1128 (9th Cir. 2024) (quoting *United States v. Scott*, 450 F.3d 863, 866–67 (9th Cir. 2006)). Attorney licensure is a state-conferred benefit. Conditioning that benefit on waiver of First Amendment rights — including waiver of the right to engage in constitutionally protected petitioning activity — is an unconstitutional condition.

106.    The Connecticut Rules of Professional Conduct challenged in Counts I through VII operate, taken together and individually, to extract from Connecticut-licensed attorneys a waiver of First Amendment rights as a condition of maintaining licensure. None of the rules challenged would apply to a non-attorney engaging in the same petitioning conduct. A non-attorney who files comments before PURA, communicates with elected officials, submits testimony to a legislative committee, or makes pre-litigation communications cannot be sanctioned by the State for the content of that speech under the framework of the challenged rules. Only attorneys can. The State thus extracts from attorneys, in exchange for the licensure benefit, a waiver of First Amendment rights that non-attorneys retain.

107.    *Spevack v. Klein*, 385 U.S. 511, 514 (1967), confirms that attorneys do not forfeit constitutional rights by becoming members of the bar. *National Institute of Family and Life Advocates v. Becerra*, 585 U.S. 755, 138 S. Ct. 2361, 2371–72 (2018), confirms that the First Amendment protects "professional speech" no less than other speech. *Spevack* and *NIFLA* together establish the constitutional principle that the unconstitutional-conditions doctrine applies to attorney licensure: the State may not extract by licensure what the State cannot achieve by direct prohibition.

108.    CT RPC 3.1, 3.3(a)(1), 3.4(7), 3.5(2), 4.2, 4.4(a), and 8.4(4), taken together, condition Connecticut attorney licensure on waiver of (i) the right to petition government for the redress of grievances, (ii) the right to free speech in regulatory and adjudicative settings, (iii) the right to communicate with elected officials about public matters, (iv) the right to make legal contentions and assert jurisdictional positions in court, (v) the right to refer to potential legal consequences in pre-litigation communications, (vi) the right to engage in zealous regulatory advocacy that may have an embarrassing effect on adverse parties, and (vii) the right to make characterizations of opposing parties' conduct without facing a residual catch-all rule capable of being applied to any disfavored advocacy. Each of these waivers is an unconstitutional condition.

109.    Practice Book § 2-39 compounds the unconstitutional-conditions injury. Under § 2-39, an attorney who has been disciplined in another jurisdiction for the same waivable First Amendment activity faces presumptive Connecticut discipline as well, with the burden of proof reversed and the standard of proof set at clear-and-convincing. The cumulative effect is to condition Connecticut licensure on national First Amendment self-censorship: a Connecticut attorney cannot rely on any other state's bar to recognize the constitutional limits on attorney-discipline rules, because Connecticut will reciprocate whatever discipline that other state imposes, with the burden reversed.

110.    Plaintiff seeks declaratory judgment that the Connecticut Rules of Professional Conduct challenged in Counts I through VII, taken individually and together with Practice Book § 2-39, impose unconstitutional conditions on Connecticut attorney licensure in violation of the

37

First, Fifth, and Fourteenth Amendments. Plaintiff seeks a preliminary and permanent injunction barring Defendants from enforcing the challenged rules against Plaintiff through Practice Book § 2-39 or otherwise based on the conduct charged in PRB Case No. 120-2025.

**Count IX — Facial and As-Applied Constitutional Challenge to Connecticut Practice Book § 2-39 Itself**
*Procedural Due Process, Substantive Due Process, Federal Forum Guarantee, and Improper Expansion of Issue Preclusion under the First, Fifth, and Fourteenth Amendments and 42 U.S.C. § 1983*

111.    Plaintiff repeats and re-alleges paragraphs 1 through 48 above as if fully set forth herein.

112.    Connecticut Practice Book § 2-39 is unconstitutional on its face and as it would be applied to Plaintiff. Section 2-39 creates a reciprocal-discipline mechanism that takes a foreign jurisdiction's disciplinary finding and gives it preclusive (or near-preclusive) effect in Connecticut, with the burden of proof reversed onto the respondent and the standard of proof elevated to clear-and-convincing. The mechanism, as designed and as applied to Plaintiff, violates procedural due process, substantive due process, the federal forum guarantee, and the constitutional limits on issue preclusion. The constitutional infirmities in § 2-39 are not derivative of the rule-specific infirmities challenged in Counts I through VII; they are structural infirmities in the reciprocal-discipline mechanism itself that exist whether or not the underlying foreign discipline involves protected First Amendment activity.

113.    *Procedural due process under Kremer and Allen.* The Supreme Court has held that preclusive effect may not be given to a prior proceeding unless the party against whom preclusion is sought had a full and fair opportunity to litigate in that proceeding. *Allen v. McCurry*, 449 U.S. 90, 95 (1980); *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481 (1982). The receiving court has the constitutional obligation to verify the adequacy of the prior proceeding as a precondition to imposing preclusive effect. *Kremer*, 456 U.S. at 481–82. Practice Book § 2-39 inverts this framework. The Connecticut tribunal presumes the adequacy of the foreign proceeding and requires the licensee to disprove it under narrow defenses, without independent receiving-jurisdiction verification of the foreign proceeding's procedural adequacy. The procedural-due-

38

process inversion is constitutionally impermissible: the State cannot impose preclusive effect without satisfying the *Kremer / Allen* full-and-fair-opportunity inquiry, and § 2-39 systematically bypasses that inquiry.

114.    *Improper expansion of issue preclusion.* Section 2-39 operates as a preclusion-like regime that exceeds what common-law issue preclusion would authorize under the modern five-element framework. The elements of issue preclusion — (i) identity of issues, (ii) actually litigated, (iii) necessarily decided, (iv) full and fair opportunity, and (v) final judgment, *Restatement (Second) of Judgments* § 27 — are not satisfied by foreign attorney-discipline proceedings as a class. The identity-of-issues element fails because foreign disciplinary proceedings adjudicate violations of foreign rules, not Connecticut rules, and the foreign and Connecticut rules diverge substantively (Connecticut has no analog to VRPC 3.5(d), and Connecticut's CT RPC 3.4(7) and CT RPC 3.1 differ materially from their Vermont analogs; see Count VII). The actually-litigated element fails because the licensee had no opportunity in the foreign proceeding to litigate the Connecticut-rule question. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985), requires that cross-sovereign preclusion be governed by the foreign jurisdiction's preclusion rules; §2-39 instead imposes a uniform rule irrespective of the foreign sovereign's preclusion framework. The mechanism is therefore an improper expansion of issue preclusion that exceeds constitutional limits.

115.    *Federal forum guarantee under First Choice.* The Supreme Court's unanimous April 29, 2026 decision in *First Choice* holds that § 1983 plaintiffs need not exhaust state-court remedies before invoking the federal forum, and warns that forced exhaustion would create a "preclusion trap" that hollows out the statute. Slip op. at 18–19. Section 2-39 operates as the precise preclusion trap *First Choice* identified: a foreign disciplinary finding, propagated through reciprocal-discipline machinery, is invoked as preclusive of the licensee's federal constitutional claims in the federal forum. The mechanism systematically subordinates federal-claim adjudication to a foreign state-court proceeding whose adequacy the receiving jurisdiction does not independently verify. The federal forum guarantee under § 1983 is incompatible with a

reciprocal-discipline regime that operates as automatic preclusion of federal claims; § 2-39 is therefore facially infirm on federal-forum-guarantee grounds independent of any rule-specific defect.

116. *Substantive due process and the rule-mismatch problem.* Section 2-39 imposes Connecticut discipline based on foreign findings made under foreign rules, without independent inquiry into whether the foreign rule and the Connecticut rule are substantively identical. As demonstrated in Counts I through VII, the Vermont rules charged in PRB Case No. 120-2025 differ materially from their Connecticut analogs: VRPC 3.5(d) has no Connecticut analog (see Count VII); VRPC 4.5 differs from CT RPC 3.4(7) (the Vermont rule omits the "solely" qualifier and reaches conduct that is constitutionally protected under the Connecticut rule); and the cumulative-pattern theory under VRPC 8.4(d) has no analog in Connecticut disciplinary practice. Section 2-39 nevertheless would import the Vermont findings into Connecticut and impose Connecticut discipline based on conduct that, under Connecticut rules, would not be subject to discipline at all. The substantive-due-process injury is the imposition of Connecticut sanctions for conduct not prohibited by Connecticut rules — a paradigm of substantive arbitrariness under *County of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998).

117. *Structural concerns under Jarkesy. SEC v. Jarkesy*, 603 U.S. 109 (2024), establishes that the Seventh Amendment and Article III impose structural limits on the adjudication of legal-in-nature claims by administrative bodies, and that those limits are particularly acute where the proceeding combines investigative, prosecutorial, and adjudicative functions in a single entity. Section 2-39 collapses Connecticut's ordinary multi-stage disciplinary process — grievance panel, Statewide Grievance Committee review, reviewing committee — into a single proceeding initiated by Disciplinary Counsel filing the certified copy of the foreign order directly with the Superior Court. The mechanism functions as administrative adjudication of legal claims (the validity of foreign discipline, the constitutional defenses available to the respondent, the application of Connecticut rules to foreign findings) without the procedural protections that Article III contemplates. Where the foreign discipline rests on constitutionally protected First Amendment

40

activity — as it does here — the *Jarkesy* concern is compounded: the Connecticut respondent has no Article III adjudication of the federal constitutional claims before the imposition of professional sanction.

118.    *The unconstitutional-condition overlay.* Section 2-39 also operates as an additional unconstitutional condition beyond the conditions challenged in Count VIII. By conditioning Connecticut licensure on submission to reciprocal discipline for any foreign sanction without independent receiving-state review of the foreign proceeding's constitutional adequacy, Connecticut requires its licensees to accept the most rights-suppressive disciplinary regime available in any state in which they are licensed. A multi-state attorney like Plaintiff cannot maintain his Connecticut license unless he accepts Connecticut's commitment to enforce, by reciprocal discipline, whatever sanctions any other state may impose — including sanctions for protected speech. The cumulative effect is to make Connecticut licensure incompatible with the constitutional limits on attorney-discipline rules in any state in which the licensee practices. The unconstitutional-conditions doctrine forbids this.

119.    *Relief sought.* Plaintiff seeks declaratory judgment that Connecticut Practice Book § 2-39 is unconstitutional on its face and as applied to Plaintiff under the First, Fifth, and Fourteenth Amendments and 42 U.S.C. § 1983, on the grounds set forth in this Count. Plaintiff seeks a preliminary and permanent injunction barring Defendants from initiating, prosecuting, or maintaining any § 2-39 proceeding against Plaintiff based on PRB Case No. 120-2025 or any other foreign disciplinary order, regardless of the conduct underlying that order. The injunction sought under this Count is broader than the injunction sought under Counts I through VIII: this Count seeks to enjoin the § 2-39 mechanism itself, not merely its application to the specific rule-based theories charged in Vermont. The mechanism is constitutionally invalid as designed and cannot be constitutionally applied to any foreign discipline order.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment in his favor and against Defendants as follows:

A.  Declare that CT RPC 3.1, 3.3(a)(1), 3.4(7), 3.5(2), 4.2, 4.4(a), and 8.4(4) are unconstitutional on their face under the First, Fifth, and Fourteenth Amendments to the United States Constitution;

B.  Declare that CT RPC 3.1, 3.3(a)(1), 3.4(7), 3.5(2), 4.2, 4.4(a), and 8.4(4) are unconstitutional as applied to Plaintiff based on the conduct charged in PRB Case No. 120-2025;

C.  Declare that the speech and petitioning activity charged in PRB Case No. 120-2025 is immunized under the First Amendment and the *Noerr-Pennington* doctrine, preventing reciprocal discipline in Connecticut;

D.  Declare that Connecticut Practice Book § 2-39 is unconstitutional on its face under the First, Fifth, and Fourteenth Amendments — including on grounds of procedural due process, substantive due process, the federal forum guarantee under 42 U.S.C. § 1983 as confirmed by *First Choice*, the improper expansion of issue preclusion, and structural concerns under *SEC v. Jarkesy*, 603 U.S. 109 (2024) — and is in any event unconstitutional as applied to Plaintiff in any reciprocal-discipline proceeding based on PRB Case No. 120-2025;

E.  Declare that the Connecticut Rules of Professional Conduct challenged in this action, taken individually and together with Practice Book § 2-39, impose unconstitutional conditions on Connecticut attorney licensure;

F.  Enter a preliminary injunction barring Defendants, their successors in office, agents, servants, employees, and all persons in active concert or participation with them from initiating, prosecuting, or maintaining any reciprocal-discipline proceeding under Practice Book § 2-39 against Plaintiff based on PRB Case No. 120-2025 or any disciplinary order resulting therefrom, pending the final disposition of this action;

G.  Enter a permanent injunction, upon final judgment, granting the same relief as set forth in paragraph F;

42

H.  Enter a permanent injunction barring Defendants from initiating an independent Connecticut disciplinary proceeding against Plaintiff based on the conduct charged in PRB Case No. 120-2025;

I.  Award Plaintiff his costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

J.  Grant such other and further relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: May 26, 2026

THE PLAINTIFF,

*/s/ Thomas Melone*
Thomas Melone
601 South Ocean Boulevard
Delray Beach, Florida 33483
Telephone: (212) 681-1120
Email: Thomas.Melone@AllcoUS.com

Connecticut Juris No. 438879